# Marble City Land & Furnace Co. v. Golden.

*Bill in Equity by Creditor of Insolvent Corporation to subject its Assets to Payment of his Debts.*

1. *Bill by simple contract creditor against corporation; when not maintainable.*—A creditor of a corporation on open account, who has no specific lien by contract or otherwise, and whose debt is disputed by the corporation, can not maintain a bill in equity to collect his debt and for the appointment of a receiver of said corporation, upon the grounds that the company is insolvent and is wasting its assets, when such grounds are not sustained by the evidence; such case being merely a suit in equity to collect a debt for which the remedy at law is full and adequate.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. S. K. McSPADDEN.

The facts of the case are sufficiently stated in the opinion.

CASSADY, BLACKWELL & KEITH, and C. C. WHITSON, for appellant.—The bill of the complainant should have been dismissed. The primary object of the bill and the facts which were averred, seeking to give it equity, failed by proof.—*Pond v. Lockwood*, 8 Ala. 669 ; *Hause v. Hause*, 57 Ala. 266 ; *Dickinson v. Bradford*, 59 Ala. 586 ; *Wilson v. Holt*, 91 Ala. 212.

The rule in equity is the same as that in law, and the *allegata* and *probata* must correspond, and it can make no difference how just the claim may appear from the proof, yet if it fails to harmonize with the allegations of the bill, a complainant can not recover.—*Graham v. Tankersley*, 15 Ala. 634 ; *Cameron v. Abbott*, 30 Ala. 416 ; *O'Bannon v. Myers*, 36 Ala. 551 ; *Helmetag v. Frank*, 61

[Marble City Land & Furnace Co. v. Golden.]

Ala. 67; *Hooper v. Strahan*, 71 Ala. 75; *Gilmer v. Wallace*, 75 Ala. 220.

KNOX, BOWIE & DIXON and BROWNE & DRYER, *contra*.—The bill in this case contained equity and was properly maintained. The company had ceased to do any business for several months, except to run a hotel at a loss, and it seems from the testimony in the case, that the hotel keeper, Dr. Lovejoy, has never been paid to this day, and that he is now suing for what is due him in that regard. None of the objects or purposes for which the company was organized were being attempted, and none of the testimony shows that there was any attempt to keep the company upon its feet or to do anything for it, except such as this complainant had done in the way of trying to dispose of some of its lots so that it could pay its pressing debts. This, in connection with the proven insolvency of the defendant, is sufficient to give the court jurisdiction. The creditors of an insolvent corporation have a lien upon all the property of the corporation for the payment of their debts, and these creditors are entitled to invoke the jurisdiction of a court of equity when the insolvency of the company is hopeless, or when further prosecution of the enterprise would clearly be at the expense of the creditors.—2 Morawetz on Corporations, §§ 786, 787; Beach on Receivers, § 619; *Weis v. Goetter, Weil & Co.*, 72 Ala. 259.

HARALSON, J.—1. The general rule is, that the jurisdiction in equity attaches only when the creditor's legal remedies have proved inadequate. For this reason, the creditor is required usually to allege in his bill seeking the assistance of an equity court in aid of his legal rights, that he has obtained judgment, and issued execution, and that there has been a return of no property found. Until then, the creditor has not established the justness of his demand,—that he is really a creditor, having a right to intermeddle with the alleged debtor's affairs.—4 Am. & Eng. Encyc. of Law, 574; 3 Brick. Dig. 340, §§ 142–3; *Lehman v. Meyer*, 67 Ala. 401; *Evans v. Welch*, 63 Ala. 250. And in cases even of the fraudulent transfer of property by a debtor, prior to the enactment of section 3544 of the Code, which authorizes a creditor without a lien to file a bill to discover or subject

to the payment of his debt any property which had been or attempted to be fraudulently transferred or conveyed by his debtor, a simple contract creditor had no remedy by bill in equity to subject property fraudulently transferred by him.—*Dickinson v. Nat. Bank of the Republic*, 98 Ala. 546; *Sweetzer v. Buchanan*, 94 Ala. 574.

2. In this case, the appellee, Golden, claiming to be a general, unsecured creditor of the appellant corporation, filed his bill against it on behalf of himself and all other creditors of the company, alleging that the defendant, a body corporate under the laws of Alabama, was largely indebted to him on account for work and labor done, and was also largely indebted to others; that it was utterly insolvent, being without funds to pay complainant and its other creditors, and unable to procure funds wherewith to pay its debts; that it had no place of business or office in the county of Talladega, and had abandoned its corporate enterprises and business; that no effort was being made to apply the corporate assets to the payment of its debts; that it was running its hotel at a loss, was being hotly pursued by its creditors, and that it was necessary for a receiver to be appointed for the preservation of the assets, and their just and fair appropriation to the payment of the debts of the corporation. Its property was stated to be of value not greater than $25,000 or 30, 000. The prayer is for a receiver; an account to ascertain complainant's debt, and for a sale of the property to satisfy the same. The register, on the application of the complainant, without notice to the company, appointed a receiver, but the court on appeal discharged him, and left the property in the hands of the company, which would hardly have been done, if the management had been guilty of the unfaithfulness charged.

3. The company answered and denied all the material allegations of the bill; denied that it owed complainant anything, but claimed, on the other hand, that on a fair settlement, he would owe the company $735.77, as would appear from the accounts between them. It attaches the contract, and what is claimed as a correct statement of the accounts between them. It denies its insolvency, and attaches a detailed statement of the debts of the company, amounting to $16,482.25, which includes, as stated, every claim against the company except that of complainant, and of J. R. Roberts for $1,750, and of

[Marble City Land & Furnace Co. v. Golden.]

S. E. Noble, for $2,000, which last named claims had not been adjusted or agreed to, and also attaches a list and valuation of its properties. It is averred that there were no disputes with any of the creditors except with complainant and the two last named, and all the just creditors had a common interest and desire to have the arrangement pending for the payment of their debts consummated; that these arrangements were, that a number of the stockholders had made a contract with parties in Philadelphia for a purchase of a part of their stock in the company,—appropriated by them as a donation to the company so far as necessary to pay its debts,—for which they were to pay $29,100, the first proceeds of which were to be paid,—to the extent of discharging them,—on the debts of the company; that $6,200 of this sum had been paid and applied to the debts of the company, and there remained $22,900 of it, still to be paid, which was available and applicable to said indebtedness; that they still own their property, some of which had been improved, which was fairly valued at $94,917,—but which the evidence shows is largely in excess of its real value,—all liens and incumbrances on which were included in the $16,482.25 of indebtedness admitted to be owing, to pay which, by the sale of said stock, the money was provided, leaving besides $6,412. The proof fairly sustains these averments. It denies its inability to procure funds with which to pay its debts, and as proof thereof states, that the indebtedness to the Larneds,— the only one which complainant mentioned in his bill as owing by defendant (except the one he claimed to be owing to himself), and which amounted to $14,890,—had been reduced by payments to $4,085; and the proofs show that the whole debt except $3,000, including the $4,085, had been paid since the filing of the bill, the $3,000 having been paid before that date. It also states and shows, that the officers of the company remain as they always have been, except a change in the presidency, by which Mr. S. E. Noble of Anniston, became president several months before the bill was filed, in place of Mr. W. W. Acheson. The company denies the allegations as to an abandoment of its corporate enterprises, and claims that it has diligently pursued its business with a large amount of success. It is admitted that their hotel is being run at a small loss, which it claims was better for

the interests of the company than to have it closed up.

4. A great mass of testimony has been taken, and the cause was finally submitted and tried on its merits. The chancellor decreed that the complainant was entitled to relief, and no other creditors having joined the complainant in the suit, he instructed the register not to advertise, notifying other creditors to propound their claims,—a practice scarcely justified by any good precedent,—but he was instructed to proceed and ascertain the amount due by the defendant to complainant, and to report at the next term. The chancellor expressed no opinion, but the fact that he did the unusual thing—to order the register not to take steps to notify creditors to propound their claims—is persuasive to show that he regarded complainant as the only creditor who distrusted the solvency of the defendant. Without waiting for the account to be stated, to ascertain if there was any indebtedness from the defendant to complainant, which the defendant denied,—claiming that complainant was indebted to it,—the defendant prosecuted this appeal to reverse that decree. If it had allowed the account to be taken, the evidence is not without tendencies at least to indicate, that it might have been spared the expense and trouble of the appeal. Whether the company is indebted to appellee is a very disputed question in the case.

It would be better, if the chancellor would not, in such cases, render decrees that can be appealed from, but interlocutory decrees, merely, ordering an account, reserving final decrees settling the equities until this has been done. See *Jones v. Wilson*, 54 Ala. 50.

5. On a careful review of the evidence, we can find nothing to indicate a disposition on the part of this company to waste and misapply its assets. That it ceased an attempt to carry out all its charter purposes, when financial distress came upon the country, and closed operations for the time, should be taken as an indication of prudence and good judgment on the part of the management, rather than as evidence of a determination to abandon its undertakings, and of a repudiation of its obligations. It has not been shown that the company wasted its assets by any improvident, ill-judged enterprise, nor to have foolishly squandered its money or property in any direction. For aught appearing, it was

[Marble City Land & Furnace Co. v. Golden.]

cautious and not wasteful. It was organized on the speculative ideas and purposes then prevalent in the country, and it happened upon an unfortunate time to launch so great a venture. It seems to have all the property now, it had in the beginning,—unless diminished by the sale of some of its lots,—but there has been a very great shrinkage in values, leaving the property at the filing of the bill to be, perhaps, of not greater value than estimated by complainant in his bill. A hotel and boarding house were added, from which a considerable part of its indebtedness seems to have accrued, and of these it may be said, if the company owed for them, it has the improvements. We find in the evidence no reasons to suspect that the $22,900 accruing from the sale of said stock will not be paid, and the indebtedness of the company thereby discharged.

Whether or not a court of equity will, under any circumstances, lend its aid to a mere general creditor without a lien, to collect his debt, is a question we do not feel called on now to decide. We have reviewed the evidence in this cause to show that,—granting the existence of the grounds claimed for equitable interposition,—the complainant has, on the facts presented, no standing for relief. But, it must not be taken from this, that we concede the bill to be maintainable, if the grounds on which its equities are claimed to rest were fully established.—*Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371.

6. The case before us, then, is one where a party claiming an indebtedness from a corporation by open account, having no specific lien therefor by contract or otherwise, files a bill in equity to collect his debt, which the corporation disputes, the only pretext for maintaining the bill being, as stated, that the company is hopelessly insolvent and is wasting its assets,—statements which are not satisfactorily sustained by the evidence. He is suing in equity to collect a debt, for which the remedy at law is full and adequate. The case is not one of which a court of equity has jurisdiction. The complainant should have been remitted to the law court for the assertion of his rights.

An order will be here entered dismissing the cause out of this and the court below.

Dismissed.